HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESUS VALENCIA-REUVELTA,

    Defendant.

Case No. CR08-5603 RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant's Motion to Suppress Evidence - Warrantless Search [Dkt. #18]. On October 16, 2008 the Court held an evidentiary hearing and heard the testimony of ICE Senior Special Agent Jacob Dye, ICE Special Agent Todd Clements, Salvador Galvin Rebuelta, and the defendant Jesus Valencia-Reuvelta. The Court has read the opening memorandums in support of and in opposition to the motion and the memorandums submitted as the parties' closing arguments together with the entirety of the record and files in this case. For the reasons set forth below, Defendant's Motion to Suppress is **DENIED**.

**I. FACTS**

On August 14, 2008, after serving several search warrants obtained as a result of an ongoing investigation of a marijuana manufacturing and distribution organization federal agents arrived at a residence located at 23817 NW Maple Crest, Ridgefield, Washington. The agents' purpose in visiting the residence was to conduct a "knock and talk" with the occupants because a vehicle linked to the marijuana

organization had been observed traveling to the Maple Crest residence on multiple occasions. Upon arrival the agents located a Hispanic male asleep under a tree behind the residence. Agents woke the Hispanic male and he identified himself as Salvador Rebuelta. He told the agents that he was from California here visiting his cousin, Jesus Valencia-Reuvelta. Salvador indicated that Jesus was in the house. Thereafter, Salvador went inside and got Jesus.

Jesus met Agents Dye and Clements near the front door of the house. Agent Clements, fluent in Spanish, asked Jesus in Spanish if he owned the home, and Jesus answered "si", or yes. Agent Clements then asked Jesus, again in Spanish, if he would consent to agents entering and searching the residence. He answered affirmatively, and Agent Clements indicated to Agent Dye that they had consent. Once inside the home agents discovered three duffle bags containing marijuana, a handgun, and $5,100.00 in U.S. currency.

After the drugs, guns, and money were found, agents interviewed the defendant. Agent Dye asked Agent Clements if he had a consent to search form, and Agent Clements retrieved from his vehicle a form he prepared for use in his investigations of violations of Immigration laws. When presented with the form by Agent Clements and read in Spanish the first right, the right to refuse consent, Jesus indicated he did not understand and refused to sign the form. Agent Clements asked, again in Spanish, if agents may continue to search and Jesus answered affirmatively.

At the search, the agents were wearing outer clothing that clearly identified them as law-enforcement officers and they were carrying sidearms in holsters that were visible. Weapons were not drawn. There were as many as ten agents on the scene over the course of the search but only four agents were there initially. Prior to giving his initial consent to enter and search his residence Jesus was not told that he had the right to refuse, was not told that if he refused the agents would get a search warrant, and was not given his Miranda rights.

## II. DISCUSSION

The defendant alleges that he did not voluntarily consent to the search of his residence and, as such, the evidence recovered should be suppressed. The government bears the burden to prove by a preponderance of the evidence that the consent was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), *citing Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *United States v. Matlock*, 415

U.S. 164, 177 (1974). The Ninth Circuit examines five nonexclusive factors in determining whether consent was voluntary: (1) whether the defendant was in custody; (2) whether the officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was informed he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000). [T]hese factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry." *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004). The question of voluntariness boils down to a totality of the circumstances test. *Schneckloth,* 412 U.S., at 222.

Here, the defendant consented after being asked to so in his native Spanish language at his front door by federal agents in clearly marked vests or jackets identifying them as law-enforcement with visible, but not drawn, sidearms. He was not in custody and thus not given Miranda warnings nor was he told that agents could obtain a search warrant. The defendant was not initially told he had the right to refuse to consent, however, that factor is not dispositive. *See United States v. Cormier,* 220 F.3d at 1113; *United States v. Torres-Sanchez*, 83 F.3d 1123, 1130 (9th Cir. 1996); *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1126 (9th Cir. 2005). Furthermore, the agents testified that the defendant was read the part of the consent form that advised him he had a right to refuse consent. Even though the defendant refused to sign the form, he thereafter orally consented to allow the agents to continue to search.

Salvador and Jesus' testimony to the contrary was simply not credible. Salvador testified that six to eight agents arrived and were yelling at him and looking in the windows and trash cans. He testified that the agents pounded on the front door of the house for five minutes and then when they spotted Jesus come out of the bedroom they rushed inside. Jesus testified that the agents rushed in before he made it to the door, and that he never gave them permission to enter his house. He testified that they were screaming at him and demanding that he admit that everything found inside the house was his. In light of the other testimony presented by the agents, this testimony is incredible.

Based on the totality of the circumstances and considering the factors set forth in the case law, the Court finds that the defendant voluntarily consented to the search of his residence. Defendant's Motion to Suppress Evidence - Warrantless Search [Dkt. #18] is **DENIED.**

**IT IS SO ORDERED.**

Dated this 23rd day of October, 2008.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE